## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

JESSICA EAKIN                              CIVIL ACTION NO. 23-1265

VERSUS                                     JUDGE JERRY EDWARDS, JR.

COOK MEDICAL LLC                           MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM RULING AND ORDER

Before the Court is a Motion to Transfer Venue filed by Cook Medical LLC ("Defendant").[1] Defendant seeks to transfer the present case from this Court to the Southern District of Indiana under 28 U.S.C. § 1404(a), asserting that the proposed venue is both proper and more convenient for the parties and their crucial witnesses. Jessica Eakin ("Plaintiff") opposes the motion, maintaining that this Court is more convenient for the parties, witnesses and evidence.[2] Defendant replied to Plaintiff's opposition.[3] After considering the parties' memoranda and applicable law, the Court **GRANTS** the Defendant's motion.

## FACTUAL & PROCEDURAL BACKGROUND

On September 13, 2023, Plaintiff filed this lawsuit raising several Title VII and Louisiana state-law claims against Defendant, her former employer.[4] Her claims are based on alleged sexual harassment and retaliation she experienced at various times during her employment.[5]

---

[1] R. Doc. 17.
[2] R. Doc. 25.
[3] R. Doc. 29.
[4] R. Doc. 1.
[5] *Id.*

Defendant is a medical device production and sales company.[6] Defendant was established as an Indiana company in 2003, and has its global headquarters in Bloomington, Indiana.[7] Defendant is licensed to and conducts business in Louisiana, although it has no offices or facilities in this state.[8] Plaintiff began working for Defendant as a District Sales Manager in January of 2016.[9] At her request, she was transferred to Louisiana in 2018.[10] Plaintiff resided in Caddo Parish, Louisiana at all times material to her claims.[11]

Plaintiff's claims arise from a 2019 incident that occurred at a conference hosted by the Society of Interventional Radiology ("SIR Conference") in Austin, Texas.[12] Plaintiff alleges that at this conference Defendant's former Director of Business–Americas, Logan Brummitt ("Mr. Brummitt"), made sexual advances towards her and attempted to lure her to his hotel room to have sex with her.[13] Plaintiff maintains that she declined Mr. Brummitt's alleged advances.[14] Plaintiff asserts that, because she rejected Mr. Brummitt's alleged advancements, Defendant began "a three-year campaign of retribution and retaliation" against her, spanning

---

[6] *Id.* at 3.
[7] R. Doc. 17-2 at 1.
[8] R. Doc. 1 at 3; R. Doc. 17-2 at 2.
[9] R. Doc. 1 at 4.
[10] *Id.* at 4.
[11] *Id.* at 3.
[12] *Id.* at 5; *see also* R. Doc. 17-3 at 19.
[13] R. Doc. 1 at 5.
[14] *Id.*

from 2020 to 2023.[15] Plaintiff claims that the retaliation was carried out in various ways via her supervisor, Matt O'Neill ("Mr. O'Neill").[16]

As evidence of this campaign of retaliation, Plaintiff claims that Defendant gave promotions and awards to Brad Bissonnette ("Mr. Bissonnette") and Corey Roger ("Mr. Roger"), even though she was more qualified.[17] Plaintiff also alleges that Lauren Perry ("Ms. Perry") covered up Defendant's employees' sexual harassment by deleting complaints made against Mr. O'Neill, Doug Bowie ("Mr. Bowie"), and Mr. Brummitt.[18]

Plaintiff asserts that in January of 2023, she contacted Heather Hurst ("Ms. Hurst"), the former Chief Ethics & Compliance Officer, and reported that she was sexually harassed by Mr. Brummitt and was being retaliated against for rejecting his unwelcome sexual advances.[19] Plaintiff also claims that she identified other victims of sexual harassment and retaliation including Melissa Gingling ("Ms. Gingling"), Jordan Lee ("Ms. Lee"), and Courtney Lung ("Ms. Lung").[20] Plaintiff made a second report of alleged retaliation to Ms. Hurst on March 1, 2023.[21]

On May 16, 2023, Plaintiff's employment with Defendant was terminated.[22] Plaintiff claims she was told that the reason her job was being eliminated was the result of a global reduction in workforce ("RIF") affecting 500 employees.[23]

---

[15] *Id.* at 5-6.
[16] *Id.*
[17] *Id.* at 6-7.
[18] *Id.* at 7.
[19] *Id.* at 8.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 9.
[23] *Id.* at 9.

On June 13, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").[24] Plaintiff asserts that as a direct result of filing this charge, several of Defendant's employees, including Ms. Hurst, Mr. Brummitt, and Mike Williams ("Mr. Williams"), resigned, were forced to resign, and/or were terminated.[25] Plaintiff claims that, after filing her Charge of Discrimination, she learned of sexual harassment/assault allegations made by other employees, including one instance involving Tori Weathers ("Ms. Weathers") and Defendant's national sales manager at the time, Mark Breedlove ("Mr. Breedlove").[26]

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court has the discretion to transfer a civil case to another district "[f]or the convenience of the parties and witnesses [and] in the interest of justice." A defendant moving to transfer venue under Section 1404(a) bears the burden of proving that a change of venue is warranted and must show good cause for the transfer.[27] To do so, the defendant must demonstrate that (a) the action could have been brought in the suggested venue, (b) a transfer is for the convenience of parties and witnesses, and (c) a transfer is in the interest of justice.[28] "When the movant demonstrates that the transferee venue is clearly more convenient, . . . it has shown good cause and the district court should therefore grant the transfer."[29]

---

[24] R. Doc. 6-1.
[25] R. Doc. 1 at 9.
[26] *Id.* at 10.
[27] *In re Volkswagen of Amer., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).
[28] *Id.*
[29] *Id.*

Conversely, if the transferee venue is not clearly the more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.[30]

The Fifth Circuit has adopted the private and public interest factors from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to determine whether one venue is clearly more convenient than another under Section 1404(a).[31] These eight factors include: 1) the cost of attendance for willing witnesses; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the relative ease of access to sources of proof; 4) the local interest in having localized interests decided at home; 5) the administrative difficulties flowing from court congestion; 6) the familiarity of the forum with the law that will govern the case; 7) the avoidance of unnecessary problems of conflict of laws; and 8) all other practical problems that make trial of a case easy, expeditious, and inexpensive (the "*Gilbert* factors").[32]

## DISCUSSION

In the complaint Plaintiff asserts that "[v]enue is proper pursuant to 42 U.S.C.A. Section 2000e-5(f)(3), 28 U.S.C.A. Section 1391(b) and (c) because the unlawful employment practices were committed within this judicial district and specifically, Caddo Parish, Louisiana."[33] Defendant contends the proposed change in venue is proper and more convenient because (1) Defendant is a citizen of Indiana, located within the Southern District of Indiana; (2) a substantial part of the events underlying Plaintiff's claims occurred in the Southern District of Indiana, while none

---

[30] *Id.*
[31] *Volkswagen*, 545 F.3d at 315.
[32] *Volkswagen*, 545 F.3d at 315; *see also*, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).
[33] R. Doc. 1 at 3.

occurred in the Western District of Louisiana; and (3) the only connection that this lawsuit has to Louisiana is that Plaintiff resides there.[34]

Plaintiff does not dispute the propriety of the transferee venue, the Southern District of Indiana.[35] The threshold issue of whether Plaintiff could properly sue Defendant in the Southern District of Indiana is easily satisfied because Defendant maintains its headquarters and principal place of business in that district.[36] Therefore, the Court need only determine whether the Southern District of Indiana is clearly a more convenient venue than the Western District of Louisiana.

Defendant contends that the Southern District of Indiana is clearly a more convenient venue because four of the *Gilbert* factors weigh in favor of transfer and the remaining factors are neutral.[37]  Plaintiff argues that transfer is inappropriate because the *Gilbert* factors weigh in favor of keeping the matter where she was employed by Defendant and where her damages were sustained.[38] To determine whether the Southern District of Indiana is clearly the more convenient venue, the Court now considers each *Gilbert* factor in turn.

**1) Cost of attendance for willing witnesses.**

---

[34] R. Doc. 17-1 at 5.
[35] R. Doc. 25 at 8.
[36] 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in…a judicial district in which any defendant resides…"); 28 U.S.C. § 1391(d) (when a suit is filed in a multi-district state, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State…"); *see also*, 42 U.S.C. § 2000e-5(f)(3) ("For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.").
[37] R. Doc. 17 at 1.
[38] R. Doc. 25 at 7.

The first *Gilbert* factor focuses on "the cost of attendance for willing witnesses."[39] The Fifth Circuit has held that "[w]hen the distance between an existing venue for trial of a matter and the proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."[40] In making this assessment, the Fifth Circuit explained:

> Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.[41]

Courts consider "not only the number of potential witnesses located in the transferor and transferee districts, but also the nature and quality of their testimony."[42]

Plaintiff's sexual harassment and retaliation claims largely center around Mr. Brummitt who resides in Knoxville, Tennessee, and Mr. O'Neill who resides in Richmond, Virginia.[43] Plaintiff's allegations also heavily focus on the reports she made to Ms. Hurst, who resides in Poland, Indiana.[44] Additionally, the issue of Plaintiff's termination will likely call forth testimony from the relevant decisions-

---

[39] *In re TikTok, Inc.*,-- F.4th --, 2023 WL 7147263, at *5 (5th Cir. Oct. 31, 2023) (quoting *Volkswagen*, 545 F.3d at 315).
[40] *In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004).
[41] *Id.*
[42] *Eakin v. J.B. Hunt*, 1993 WL 543041, at *2 (E.D. La. Dec. 23, 1993); *see also, Ibarra v. Orica USA, Inc.*, 2011 WL 13180231, at *10 (W.D. Tex. Sept. 21, 2011).
[43] R. 17-3 at 5; R. Doc. 17-2 at 2.
[44] R. Doc. 17-2 at 1.

makers like Mr. Williams who resides in Salt Lake City, Utah, and Rich Florey ("Mr. Florey") who resides in Bloomington, Indiana.[45] Plaintiff also identifies Mr. Breedlove, who resides in Carmel, Indiana, in her complaint.[46] Plaintiff claims that two Louisiana residents, Mr. Bissonnette and Mr. Roger, who are named in her complaint, will be necessary witnesses.[47] Plaintiff also identifies four (4) of Defendant's employees who live in Louisiana and eleven (11) who live closer to the current venue than the transferee venue, claiming they have knowledge relevant to her claims.[48]

Defendant asserts that more key witnesses reside in, or closer to, the Southern District of Indiana, making it less costly for these witnesses to testify by deposition or at trial.[49] Plaintiff claims that the difference in distance between the two districts, as to certain witnesses, is de minimis and does not outweigh other factors favoring maintaining the venue chosen by Plaintiff.[50] Plaintiff also contends that more witnesses live in or around Louisiana.[51] Defendant argues that the witnesses that Plaintiff identifies have little relevant information to provide and lack personal knowledge of the facts at issue.[52]

The Court is persuaded that more of the key witnesses, many of whom are named in Plaintiff's complaint, live in or closer to the Southern District of Indiana.

---

[45] R. Doc. 17-2 at 1-2.
[46] R. Doc. 17-2 at 2.
[47] R. Doc. 25 at 11-12.
[48] R. Doc. 25 at 12.
[49] R. Doc. 17 at 10-11.
[50] R. Doc. 25 at 13.
[51] R. Doc. 25 at 10-12.
[52] R. Doc. 29 at 6-7.

Many of the individuals identified by Plaintiff who live in or closer to this district are unlikely to possess relevant, personal knowledge of the facts and are unlikely to offer quality testimony. Therefore, the Court finds the first *Gilbert* factor weighs in favor of transferring the case because doing so would reduce the cost of attendance for the key witnesses.

## 2) Availability of compulsory process to secure the attendance of witnesses.

The second *Gilbert* factor weighs heavily in favor of transfer when more non-party witnesses reside within the transferee forum—even more so when the transferee venue has "absolute subpoena power," or "subpoena power for both depositions and trial."[53] The Federal Rules of Civil Procedure provide district courts with the authority to compel non-party witnesses "to attend a trial, hearing, or deposition" that is conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[54] Further "[t]he convenience of and/or inability to subpoena one key witness may outweigh the convenience of a great number of less important witnesses."[55]

There is at least one critical, non-party witness within the proposed venue's subpoena power. In the event this witness, Ms. Hurst, were unwilling to testify by deposition or at trial, the absolute subpoena power of the Southern District of Indiana would be of particular importance. By contrast, Plaintiff has not alleged that there are any critical witnesses within this Court's subpoena power. The need for Ms.

---

[53] *Volkswagen*, 545 F.3d at 316.
[54] Fed. R. Civ. P. 45(c)(1)(A).
[55] *Eakin v. J.B. Hunt*, 1993 WL 543041, at *2 (E.D. La. Dec. 23, 1993).

Hurst's testimony in this matter outweighs the convenience for Plaintiff's less critical witnesses who live closer to this forum. For these reasons, the Court finds that the second *Gilbert* factor also favors transfer to the Southern District of Indiana.

**3) Relative ease of access to sources of proof.**

The third *Gilbert* factor considers the location of relevant documents and physical evidence to determine which court, if any, has easier access to sources of proof.[56] "Where relevant employment records are maintained and administered is expressly stated as a venue factor in the special venue statute [of Title VII] and should be weighed by a District Court in evaluating the 'interest of justice' aspect of the motion to transfer."[57]

Defendant maintains that the documentation and physical evidence relevant to Plaintiff's claims are kept at its headquarters in Bloomington, Indiana.[58] This includes, Plaintiff's employment documents, documents and information related to Plaintiff's reports to the Ethics & Compliance Office, and documents relevant to Defendant's decision to terminate Plaintiff's employment.[59] Plaintiff's opposition does not address sources of proof outside of witness testimony which is considered fully and separately by the first and second factors. The Court agrees that because the relevant documentation is all kept at Defendant's headquarters in Indiana, this factor also weighs in favor of transfer.

---

[56] *Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 823 (S.D. Tex. 2022).
[57] *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003); *see also, LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 831 (N.D. Tex. 2013) (finding that this factor favors transfer when a plaintiff's personnel files are located at the company's headquarters in the transferee district and at least three witnesses resided in the transferee district).
[58] R. Doc. 17 at 12-13.
[59] R. Doc. 17-2 at 2.

**4)  Local interest in having localized interests decided at home.**

The fourth *Gilbert* factor analyzes where the alleged wrongdoing(s) occurred. The location of the alleged wrongdoing is of "primary importance."[60] In an employment discrimination case, the operative facts are deemed to occur in the district where the unlawful employment decisions were made rather than where they were felt.[61] When the relevant events underlying the controversy occurred in the transferee venue, then a transfer is favored.[62] "Transfer is appropriate where none of the operative facts occurred in the division and where the division has no particular local interest in the outcome of the case."[63]

Defendant asserts that the vast majority of the alleged wrongdoing took place in Indiana, while none occurred Louisiana.[64] Defendant also asserts that the Southern District of Indiana generally has a stronger interest in adjudicating these claims because Defendant is headquartered within its jurisdiction and its employment practices impact more residents and citizens in Indiana than in Louisiana.[65] Plaintiff maintains that Defendant's wrongful employment actions took place in Louisiana where she was employed with Defendant, performed the majority of her job duties, and sustained damages.[66] Plaintiff argues that this district has an interest in adjudicating employment practices which take place in this state.[67]

---

[60] *Boutte v. Cenac Toing, Inc.*, 346 F. Supp. 2d 922, 933 (S.D. Tex. 2004).
[61] *Osborn v. AECOM*, 2019 WL 13082170, at *4 (W.D. Tex. May 16, 2019).
[62] *See Allen v. Ergon Marine & Indus. Supply, Inc.*, 2008 WL 4809476, *5 (E.D. La. Oct. 31, 2008).
[63] *Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*, 2009 WL 3784371, at *3 (E.D. Tex. Nov. 10, 2009) (citing *Volkswagen*, 545 F.3d at 318).
[64] R. Doc. 17-1 at 10.
[65] R. Doc. 17-1 at 10.
[66] R. Doc. 25 at 8.
[67] R. Doc. 25 at 8.

Plaintiff claims that the initial sexual harassment incident occurred at the 2019 SIR Conference held in Austin, Texas.[68] Plaintiff reported the alleged harassment and retaliation to Ms. Hurst, who was based in Bloomington, Indiana. Defendant's decision to terminate Plaintiff's employment, allegedly as part of its reduction in force, was made by two individuals working from Bloomington, Indiana.[69] Defendant maintains that it has no offices or facilities in Louisiana.[70] However, Plaintiff argues that because Defendant requires each of its field employees to have a home office it has a least seven offices in Louisiana.[71] As of January 12, 2024, Defendant had 304 employees living in Indiana and only 10 in Louisiana.[72]

Considering the foregoing facts, the Court finds that even if Plaintiff "felt" the effects of the alleged wrongful conduct in Louisiana, none of the unlawful employment decisions were made in this state. Contrarily, the relevant decisions were made in Indiana or other states. Further, it is clear that Defendant's employment practices impact more Indiana citizens than Louisiana citizens. Accordingly, the Southern District of Indiana has a stronger local interest in adjudicating Plaintiff's claim and this *Gilbert* factor favors transfer.

**5) Administrative difficulties flowing from court congestion.**

The fifth *Gilbert* factor contemplates whether there is "an appreciable difference" in docket congestion in each venue and favors the court that can bring the

---

[68] R. Doc. 1 at 5; R. Doc. 17-3 at 19.
[69] R. Doc. 17-2 at 2.
[70] R. Doc. 17-2 at 2.
[71] R. Doc. 25 at 12.
[72] R. Doc. 29-1 at 2.

case to trial faster.[73] Courts typically rely on federal judicial caseload statistics to make this assessment; however, the Fifth Circuit has noted that this factor is the most speculative.[74] Accordingly, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh those other factors."[75]

The median interval time from initial case filing to disposition in this Court is 9.4 months, while in the Southern District of Indiana it is 13 months.[76] Defendant states that this difference is not meaningful.[77] Plaintiff asserts that the 4.5-month difference "is a lifetime to [Plaintiff] who is a single mother [and] is present unemployed due to her wrongful termination… ."[78]

Noting the speculative nature of this factor, the Court finds that the 4.5-month difference is neutral or, at best, leans slightly against transfer.[79] The Court will prioritize this factor behind other, more pivotal factors.

**6) Familiarity of the forum with the law that will govern the case.**

"The governing law is federal law with which the two district courts are equally familiar."[80] When the controlling law is federal, a party's suggestion that the

---

[73] *Hard Metal Advantage LLC v. Kennametal Inc., 2022 WL 1088887*, at *5 (W.D. La. March 22, 2022) (citations omitted).
[74] *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (5th Cir. 2021).
[75] *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (5th Cir. 2021) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)).
[76] R. Doc. 17-3 at 15.
[77] R. Doc. 29 at 10-11.
[78] R. Doc. 25 at 13-14.
[79] *See e.g., Johnson v. Union Pacific Railroad Co.*, 2015 WL 7777983, at *5 (E.D. La. Dec. 2, 2015) (finding this factor neutral where there was a 6.6-month difference in median time interval between the two courts).
[80] *See Trover Group, Inc. v. Tyco Inter., Ldt.*, 2014 WL 12596722, at *6 (E.D. Tex. April 11, 2014).

proposed transferee district court "lacks the experience or ability of the court in this District" is both an affront to that court and an illusion to be ignored.[81]

Plaintiff's complaint asserts three separate counts—two pursuant to Title VII and one pursuant to the Louisiana Employment Discrimination Law ("LEDL").[82] The parties do not dispute that the two federal courts are equally familiar with claims arising under Title VII.[83] The parties disagree, however, over whether the Southern District of Indiana is as equally familiar with the LEDL. Presuming but not conceding that Plaintiff's state law claim is viable, Defendant contends that the Southern District of Indiana would be as capable as this Court to evaluate the merits of Plaintiff's LEDL claims because the scope of the LEDL is similar to that of Title VII.[84] Plaintiff asserts that a Louisiana Court would have more familiarity with the LEDL than the Southern District of Indiana.[85]

As Defendant points out, "[b]ecause the LEDL is similar in scope to Title VII, Louisiana courts often look to federal jurisprudence to interpret Louisiana employment discrimination law.[86] This Court has previously held that "[a] plaintiff who fails or succeeds in meeting her burden under Title VII will do likewise in an identical claim brought under the LEDL."[87]

---

[81] *Nexen Petroleum U.S.A., Inc. v. Ensco Offshore Co.*, 2015 WL 6511879, at *11 (W.D. La. Oct. 27, 2015).

[82] R. Doc. 1.

[83] R. Doc. 25 at 10; R. Doc. 17-1 at 15-16.

[84] R. Doc. 17-1 at 15-16.

[85] R. Doc. 25 at 10.

[86] *Richard v. La Dept. of Child. & Fam. Serv.*, 2022 WL 3328978, at *3 (W.D. La. Aug. 11, 2022) (citing *King v. Phelps Dunbar LLP*, 743 So.2d 781, 787 (La. 1999).

[87] *Richard v. La Dept. of Child. & Fam. Serv.*, 2022 WL 3328978, at *3 (W.D. La. Aug. 11, 2022) (citing *Martin v. Winn-Dixie La., Inc.*, 132 F. Supp. 3d 794, 811 (M.D. La. 2015).

Here, Plaintiff's claims under Title VII and the LEDL are identical. The Court finds that the Southern District of Indiana is just as capable as this Court to apply the Title VII analysis to Plaintiff's LEDL claims. Therefore, this *Gilbert* factor remains neutral.

**7) Avoidance of unnecessary problems of conflict of laws.**

The parties agree that there are no conflicts of law which would make one venue more convenient than the other.[88] Therefore, this factor is neutral.

**8) Other practical issues.**

The parties agree that there are no practical issues that make either court more convenient than the other.[89] Therefore, this factor is also neutral.

## <u>CONCLUSION</u>

Considering the *Gilbert* factors as a whole and giving each the weight they deserve, the Court finds that the Southern District of Indiana is clearly the more convenient venue for this case. The Southern District of Indiana is closer to critical witnesses, most of the relevant documents and evidence is housed at Defendant's headquarters in Bloomington, Indiana, and more of the operative facts occurred in Indiana, or at least not in Louisiana. The only real connection that this case has to the Western District is Plaintiff's residence in Caddo Parish, Louisiana and that she worked remotely for Defendant in this area. Given the Southern District of Indiana's stronger ties to this case, the Court finds that Defendant has carried its burden of showing "good cause" for transfer and proven that the Southern District of Indiana is

---

[88] R. Doc. 25 at 14; R.Doc. 17-1 at 16.
[89] R. Doc. 25 at 14; R. Doc. 17-1 at 17.

a clearly more convenient forum. It is in the interest of justice that this Court transfer this case to the Southern District of Indiana.

### ORDER

Accordingly, **IT IS ORDERED** that Defendant Cook Medical LLC's "Motion to Transfer Venue" (R. Doc. 17) is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is T**RANSFERRED** to the **SOUTHERN DISTRICT OF INDIANA.**

**Pursuant to General Order No. 2-2024 of this Court, this Order is stayed and shall not take effect until the expiration of 21 days from the date this Order is filed into the record.**

**THUS DONE AND SIGNED** this 28th day of February, 2024.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**